UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JEFFREY A. BRONSTER, PC
625 18th Street
Union City, NJ 07087
(201) 330-7701
Fax: (201) 330-7701
email: jbronster@bronsterlaw.com
Attorney for the Plaintiff

_____
                                                          :
PATRICK DONNELLY, individually and on      :          Civil Action No.
behalf of a class of similarly situated persons and  :
entities,                                                 :
                                                          :
                        Plaintiff,              :
                                                          :          **COMPLAINT**
vs.                                                       :
                                                          :          **(Class Action)**
NEW JERSEY RE-INSURANCE COMPANY;      :
ASSURANT INSURANCE GROUP (d/b/a            :
American Bankers Insurance Company of Florida); :
FIDELITY NATIONAL PROPERTY &               :
CASUALTY INSURANCE COMPANY (also         :
d/b/a Fidelity National Property & Casualty           :
Insurance Company);  HARTFORD FIRE          :
INSURANCE COMPANY; LIBERTY MUTUAL        :
FIRE INSURANCE COMPANY; SELECTIVE         :
INSURANCE COMPANY OF AMERICA;             :
PHILADELPHIA CONTRIBUTIONSHIP             :
INSURANCE COMPANY; STATE FARM FIRE       :
AND CASUALTY COMPANY;  TRAVELERS         :
INSURANCE COMPANIES (also d/b/a Standard    :
Fire Insurance Company); and ABC INSURANCE  :
COMPANIES 1-10 (being fictitious names).        :
                                                          :
                        Defendants.             :
_____:

NOW COMES THE PLAINTIFF, Patrick Donnelly, by and through his attorneys, Jeffrey A. Bronster, PC, individually and on behalf of a class of similarly situated persons and entities, and files this Complaint against the defendants as follows:

## JURISDICTION AND PARTIES

1. This is an action brought by Patrick Donnelly, an individual residing at 245 Grove Street, Jersey City, New Jersey 07032, on his own behalf and on behalf of a class of similarly situated persons and entities further described herein, all of whom operated businesses or owned real or personal property, including condominiums, in the State of New Jersey on the various dates relevant to this action.

2. The claims asserted here arise out of the 2011 storm known as "Hurricane Irene" and the 2012 storm known as "Hurricane Sandy," and relate to the handling of flood claims by various insurance companies that participated in FEMA's "Write Your Own" program, and consequently issued the federal Standard Flood Insurance Policy ("SFIP") to the owners of real and persons property located in the state of New Jersey.

3. Because the claims asserted herein arise under the SFIP, this Court has jurisdiction over this action Pursuant to 42 U.S.C. § 4053, without regard to the amount in controversy or the citizenship of the parties.

4. Defendant New Jersey Re-Insurance Company is an insurance company, having its principle place of business at 301 Sullivan Way, West Trenton, NJ 08628, which issued flood insurance policies under the FEMA "Write Your Own" program, insuring both real and personal property located within the state of New Jersey.

-2-

5.   Defendant Assurant Insurance Group is an insurance company also doing business as American Bankers Insurance Company of Florida, having its principle place of business at 11222 Quail Roost Drive, Miami, FL 33157, which issued flood insurance policies under the FEMA "Write Your Own" program, insuring both real and personal property located within the state of New Jersey.

6.   Defendant Fidelity National Property & Casualty Insurance Company is an insurance company, also doing business as Fidelity National Property & Casualty Insurance Company, having its principle place of business at 4905 Belfort Road, Jacksonville, FL 32256, which issued flood insurance policies under the FEMA "Write Your Own" program, insuring both real and personal property located within the state of New Jersey.

7.   Defendant Hartford Fire Insurance Company is an insurance company, having its principle place of business at One Hartford Plaza, Hartford, CT 06155, which issued flood insurance policies under the FEMA "Write Your Own" program, insuring both real and personal property located within the state of New Jersey.

8.   Defendant Liberty Mutual Fire Insurance Company is an insurance company, having its principle place of business at 175 Berkeley Street, Boston, MA 02116, which issued flood insurance policies under the FEMA "Write Your Own" program, insuring both real and personal property located within the state of New Jersey.

9.   Defendant Selective Insurance Company of America is an insurance company, having its principle place of business at 40 Wantage Avenue, Branchville, NJ 07890, which issued flood insurance policies under the FEMA "Write Your Own" program, insuring both real and personal property located within the state of New Jersey.

10. Defendant Philadelphia Contributionship Insurance Company is an insurance company, having its principle place of business at 231 Saint Asaphs Road, Bala Cynwyd, PA 19004, which issued flood insurance policies under the FEMA "Write Your Own" program, insuring both real and personal property located within the state of New Jersey.

11. Defendant State Farm Fire and Casualty Company is an insurance company, having its principle place of business at 1 State Farm Plaza, Bloomington, IL 61710, which issued flood insurance policies under the FEMA "Write Your Own" program, insuring both real and personal property located within the state of New Jersey.

12. Defendant Travelers Insurance Companies is an insurance company, also doing business as Standard Fire Insurance Company, having its principle place of business at 385 Washington Street, St. Paul, MN 55102, which issued flood insurance policies under the FEMA "Write Your Own" program, insuring both real and personal property located within the state of New Jersey.

13. Defendants ABC Insurance Company 1-10 are insurance companies, whose identities are not presently known to the plaintiff, that issued flood insurance policies under the FEMA "Write Your Own" program, insuring both real and personal property located within the state of New Jersey, and which engaged in the wrongful conduct described herein.

## FIRST CAUSE OF ACTION

### Donnelly v. NJ Re-Insurance:  Breach of Contract

1. At all times relevant to this action, plaintiff's home was covered by a FEMA flood policy issued under the WYO program by New Jersey Re-Insurance Company, Policy No. 00N0105734.

2. On or about August 28, 2011, as a result of the storm known as Hurricane Irene, the plaintiff's property suffered damage constituting a covered event under the Policy.

3.  Thereafter, plaintiff complied with the terms of the Policy, and filed a claim for payment thereunder.

4.  Nevertheless, by letter dated February 27, 2012 from James A. Sadler, Director of Claims for the National Flood Insurance Program, plaintiff's flood claim was denied.

5.  The basis for the denial of plaintiff's claim was the erroneous classification of the lowest floor of his building as a "basement," as that term is defined in the FEMA flood policy.

6.  The denial was a breach of the insurance contract, whereby plaintiff has been damaged.

WHEREFORE, plaintiff demands judgment for compensatory damages, prejudgment interest, and such further relief as the Court may deem just and proper.

## SECOND CAUSE OF ACTION

### Breach of Contract  - Class A  (Hurricane Irene)

1.   The allegations of all previous paragraphs of this Complaint are realleged and incorporated as though fully set forth herein.

2.  Class A is defined as consisting of the following: (1)  all individuals and entities that operated businesses or that owned real or personal property, including condominiums, located in the State of New Jersey during the period of Hurricane Irene, (2) that made claims for damages from Hurricane Irene under an SFIP issued by one of the defendant insurance companies, and (3)  and that had such claim denied, either in whole or in part, under Section III(A)(8) of the SFIP, based upon an interpretation or application of the policy provisions relating to the term "basement."

3.  On or about August 22, 2011, the Class 3 hurricane that came to be known as Hurricane Irene was born in the Atlantic Ocean.

4. Before it ended, Hurricane Irene would achieve wind speeds of 125 miles per hour, and would cause fifteen billion dollars worth of damage in the United States alone.

5. In the state of New Jersey, over a period of approximately three days, Hurricane Irene resulted in seven deaths, produced record-level rainfalls, flooded rivers, inundated homes and businesses, resulted in the loss of electricity to approximately 1.5 million homes and businesses, and ultimately caused financial damage estimated to be in excess of one billion dollars, leading to New Jersey being declared a disaster area by the President of the United States.

6. By the end of 2011, the insurance industry was reporting that more than seven hundred million dollars in claims had already been approved nationally under FEMA flood policies, with well over a third of that amount allocated to New Jersey alone.

7. To respond to the emergency situation presented by the tens of thousands of New Jersey flood insurance claims arising out of Hurricane Irene, the defendant insurance companies often relied upon the services of outside, third-party insurance adjusters, many of whom had only limited experience in handling claims under the standard FEMA policy, and who received only minimal training in the handling of such claims.

8. As of the dates of Hurricane Irene, the SFIP that was in effect contained the following definition of the term "basement":

> **Basement.  Any area of the building, including any sunken room or sunken portion of a room, having its floor below ground level (subgrade) on all sides.**

9. Section III of the SFIP, captioned, "Property Covered," contains the following limitation in sub-section III(A)(8) as to covered property:

**Items of property in a building enclosure below the lowest elevated floor of an elevated post-FIRM building located in Zones A1-A30, AE, AH, AR, AR/A, AR/AE, AR/AH, AR/A1-A30, V1-V30, or VE, or in a basement, regardless of the zone. Coverage is limited to the following:**

**a. Any of the following items, if installed in their functioning locations and, if necessary for operation, connected to a power source:**

**(1)  Central air conditioners;**

**(2)  Cisterns and the water in them;**

**(3)Drywall for walls and ceilings in a basement and the cost of labor to nail it, unfinished and unfloated and not taped, to the framing;**

**(4) Electrical junction and circuit breaker boxes;**

**(5) Electrical outlets and switches;**

**(6) Elevators, dumbwaiters, and related equipment, except for related equipment installed below the base flood elevation after September 30, 1987;**

**(7) Fuel tanks and the fuel in them;**

**(8) Furnaces and hot water heaters;**

**(9) Heat pumps;**

**(10) Nonflammable insulation in a basement;**

**(11) Pumps and tanks used in solar energy systems;**

**(12) Stairways and staircases attached to the building, not separated from it by elevated walkways;**

**(13) Sump pumps;**

**(14) Water softeners and the chemicals in them, water filters, and faucets installed as an integral part of the plumbing system;**

**(15) Well water tanks and pumps;**

**(16) Required utility connections for any item in this list; and**

**(17) Footings, foundations, posts, pilings, piers, or other foundation walls and anchorage systems required to support a building.**

**b. Clean-up.**

10.  In numerous instances, insurance claims relating to Hurricane Irene under the SFIP were wrongfully denied, either in whole or in part, based upon either a misinterpretation or a misapplication of the term "basement" as used in the aforementioned sections of the SFIP.

11.  Upon information and belief, the aforesaid claim denials were made by FEMA at the request or recommendation of the particular Write your Own insurance company that issued the SFIP policy to the insured.

12.  Pursuant to federal law, notwithstanding the fact that the denials were issued by FEMA, and regardless of whether or not the individual Write Your Own insurance companies actually requested or recommended such denials, the remedy of each member of the class for a breach of the contract of insurance lies against such member's issuing insurance company, rather than against FEMA or any other agency or representative of the federal government.

13.  The aforesaid class is so numerous that joinder of all members as individual plaintiffs is impracticable.

14.  There are questions of law or fact - - particularly, the interpretation and application of the terms referred to above - - that are common to all members of the class.

15.  The claims of Patrick Donnelly as representative party are typical of the claims of the members of this class, in that all are asserting a challenge to the defendants' interpretation and application of the terms referred to above.

16.   The representative party will fairly and adequately protect the interests of the class, inasmuch as his interest in having the aforesaid terms interpreted and applied correctly is equally in the interests of all members of the class.

17.   The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the defendants.

18.   The prosecution of separate actions by individual members of the class would create a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of other members not parties to the adjudications, or which would substantially impair or  impede their ability to protect their interests.

19.   The questions common to the members of the class predominate over any questions affecting only individual members, such that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

WHEREFORE, the members of Class A demand judgment against the defendant insurance companies for compensatory damages, such declaratory relief as may be appropriate, prejudgment interest, attorneys fee, costs of suit, and such further relief as the Court may deem just and proper.

### THIRD CAUSE OF ACTION

### Breach of Contract  - Class A-I  (Jersey City)

1.   The allegations of all previous paragraphs of this Complaint are realleged and incorporated as though fully set forth herein.

2.  Class A-I is a sub-class of Class A, defined as consisting of the following: (1)  all individuals and entities that operated businesses or that owned real or personal property, including condominiums, located in the City of Jersey City during the period of Hurricane Irene, (2) that made claims for damages from Hurricane Irene under an SFIP issued by one of the defendant insurance companies, and (3)  and that had such claim denied, either in whole or in part, under Section III(A)(8) of the SFIP, based upon an interpretation or application of the policy provisions relating to the term "basement."

3.  The specific allegations of plaintiff's Second Cause of Action are hereby reasserted on behalf of Class A-I.

4.  Upon information and belief, property and business owners in the City of Jersey City suffered a disproportionately high number of improper claim denials on the basis of the above-cited provisions of Section III(A)(8) of the SFIP.

5.  In the event that the certification of Class A is denied, plaintiff nevertheless requests the certification of Class A-I.

WHEREFORE, the members of Class A-I demand judgment against the defendant insurance companies for compensatory damages, such declaratory relief as may be appropriate, prejudgment interest, attorneys fee, costs of suit, and such further relief as the Court may deem just and proper.

## FOURTH CAUSE OF ACTION

### Breach of Contract  - Class A-II  (Hoboken)

1.  The allegations of all previous paragraphs of this Complaint are realleged and incorporated as though fully set forth herein.

-10-

2.  Class A-II is a sub-class of Class A, defined as consisting of the following: (1)  all individuals and entities that operated businesses or that owned real or personal property, including condominiums, located in the City of Hoboken during the period of Hurricane Irene, (2) that made claims for damages from Hurricane Irene under an SFIP issued by one of the defendant insurance companies, and (3)  and that had such claim denied, either in whole or in part, under Section III(A)(8) of the SFIP, based upon an interpretation or application of the policy provisions relating to the term "basement."

3.  The specific allegations of plaintiff's Second Cause of Action are hereby reasserted on behalf of Class A-II.

4.  Upon information and belief, property and business owners in the City of Hoboken suffered a disproportionately high number of improper claim denials on the basis of the above-cited provisions of Section III(A)(8) of the SFIP.

5.  In the event that the certification of Class A is denied, plaintiff nevertheless requests the certification of Class A-II.

WHEREFORE, the members of Class A-II demand judgment against the defendant insurance companies for compensatory damages, such declaratory judgment as to coverage as may be appropriate, prejudgment interest, attorneys fee, costs of suit, and such further relief as the Court may deem just and proper.

## FIFTH CAUSE OF ACTION

## Class B  (Hurricane Irene)

1.   The allegations of all previous paragraphs of this Complaint are realleged and incorporated as though fully set forth herein.

2.   Class B is defined as consisting of the following: (1)  all individuals and entities that operated businesses or that owned real or personal property, including condominiums, located in the State of New Jersey during the period of Hurricane Irene, (2) that made claims for damages from Hurricane Irene under an SFIP issued by one of the defendant insurance companies, and (3)  and that agreed to accept less than the full value of their claim in reliance upon inaccurate, negligent, and/or fraudulent statements and representations made by authorized agents of their respective insurance companies as to the interpretation and effect of the terminology of Section III(A)(8) of the SFIP relating to the term "basement" as set forth heretofore in plaintiff's Second Cause of Action.

3.   Numerous persons and entities insured during Hurricane Irene were given incorrect information about the application of Section III(A)(8) to their property, often by the third party adjusters relied upon by the insurance companies as set forth above.

4.   As a result of the misrepresentations on the part of the insurance companies and their agents and representatives, whether made negligently or with fraudulent intent, numerous insureds settled their claims for less than the amount to which they were entitled, and therefore never actually received denial letters.

5.   The aforesaid conduct by the defendant insurance companies was negligent, in breach of contract, and in breach of the covenants of good faith and fair dealing.

6.  The aforesaid class is so numerous that joinder of all members as individual plaintiffs is impracticable.

7.  There are questions of law or fact - - particularly, the interpretation and application of the terms referred to above - - that are common to all members of the class.

8.  The claims of Patrick Donnelly as representative party are typical of the claims of the members of this class, in that all are asserting a challenge to the defendants' interpretation and application of the terms referred to above.

9.  The representative party will fairly and adequately protect the interests of the class, inasmuch as his interest in having the aforesaid terms interpreted and applied correctly is equally in the interests of all members of the class.

10.  The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the defendants.

11.  The prosecution of separate actions by individual members of the class would create a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of other members not parties to the adjudications, or which would substantially impair or  impede their ability to protect their interests.

12.  The questions common to the members of the class predominate over any questions affecting only individual members, such that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

WHEREFORE, the members of Class B demand judgment against the defendant insurance companies for compensatory damages, punitive damages, such declaratory relief as may be appropriate, prejudgment interest, attorneys fee, costs of suit, and such further relief as the Court may deem just and proper.

## SIXTH CAUSE OF ACTION

### Class B-I  (Jersey City)

1.   The allegations of all previous paragraphs of this Complaint are realleged and incorporated as though fully set forth herein.

2.   Class B-I is a sub-class of Class B, defined as consisting of the following: (1)  all individuals and entities that operated businesses or that owned real or personal property, including condominiums, located in the City of Jersey City during the period of Hurricane Irene, (2) that made claims for damages from Hurricane Irene under an SFIP issued by one of the defendant insurance companies, and (3)  and  that agreed to accept less than the full value of their claim in reliance upon inaccurate, negligent, and/or fraudulent statements and representations made by authorized agents of their respective insurance companies as to the interpretation and effect of the terminology of Section III(A)(8) of the SFIP relating to the term "basement" as set forth heretofore in plaintiff's Second Cause of Action.

3.   The specific allegations of plaintiff's Fifth Cause of Action are hereby reasserted on behalf of Class B-I.

4.   Upon information and belief, property and business owners in the City of Jersey City suffered a disproportionately high number of instances of the improper claims handling discussed above on the basis of the above-cited provisions of Section III(A)(8) of the SFIP.

-14-

5.  In the event that the certification of Class B is denied, plaintiff nevertheless requests the certification of Class B-I.

WHEREFORE, the members of Class B-I demand judgment against the defendant insurance companies for compensatory damages, punitive damages, such declaratory relief as may be appropriate, prejudgment interest, attorneys fee, costs of suit, and such further relief as the Court may deem just and proper.

## SEVENTH CAUSE OF ACTION

### Class B-II  (Hoboken)

1.  The allegations of all previous paragraphs of this Complaint are realleged and incorporated as though fully set forth herein.

2.  Class B-II is a sub-class of Class B, defined as consisting of the following: (1)  all individuals and entities that operated businesses or that owned real or personal property, including condominiums, located in the City of Hoboken during the period of Hurricane Irene, (2) that made claims for damages from Hurricane Irene under an SFIP issued by one of the defendant insurance companies, and (3)  and  that agreed to accept less than the full value of their claim in reliance upon inaccurate, negligent, and/or fraudulent statements and representations made by authorized agents of their respective insurance companies as to the interpretation and effect of the terminology of Section III(A)(8) of the SFIP relating to the term "basement" as set forth heretofore in plaintiff's Second Cause of Action.

3.  The specific allegations of plaintiff's Fifth Cause of Action are hereby reasserted on behalf of Class B-II.

4.   Upon information and belief, property and business owners in the City of Hoboken suffered a disproportionately high number of instances of the improper claims handling discussed above on the basis of the above-cited provisions of Section III(A)(8) of the SFIP.

5.  In the event that the certification of Class B is denied, plaintiff nevertheless requests the certification of Class B-II.

WHEREFORE, the members of Class B-II demand judgment against the defendant insurance companies for compensatory damages, punitive damages, such declaratory judgment as to coverage as may be appropriate, prejudgment interest, attorneys fee, costs of suit, and such further relief as the Court may deem just and proper.

## EIGHTH CAUSE OF ACTION

### Breach of Contract  - Class C  (Hurricane Sandy)

1.   The allegations of all previous paragraphs of this Complaint are realleged and incorporated as though fully set forth herein.

2.  Class C is defined as consisting of the following: (1)  all individuals and entities that operated businesses or that owned real or personal property, including condominiums, located in the State of New Jersey during the period of Hurricane Sandy, (2) that made claims for damages from Hurricane Sandy under an SFIP issued by one of the defendant insurance companies, and (3)  and that had such claim denied, either as of the date of the filing of this Complaint or as the date of plaintiff's application for the certification of Class C, either in whole or in part, under Section III(A)(8) of the SFIP, based upon an interpretation or application of the policy provisions relating to the term "basement."

3.  On or about October 22, 2012, a tropical storm in the Caribbean Sea pushed northward, and within approximately two days became a hurricane that was to be known as "Hurricane Sandy," the largest Atlantic hurricane ever recorded.

4.  By the time Hurricane Sandy reached New Jersey on October 28, 2012, moving ashore near Atlantic City, it was classified as a post-tropical cyclone with hurricane-force winds; before it ended, it would kill at least 131 people and cause damage estimated at over sixty billion dollars in the United States alone.

5.  In the state of New Jersey, Hurricane Sandy resulted in at least thirty-seven deaths, wide-spread flooding and power outages, the destruction or serious damage to at least 30,000 homes and businesses, and more than thirty-five billion dollars in damage, leading to New Jersey being declared a disaster area by the President of the United States.

6.  As was the case after Hurricane Irene, the defendant insurance companies are relying heavily upon the services of outside, third-party insurance adjusters, many of whom have only limited experience in handling claims under the standard FEMA policy, and who have received only minimal training in the handling of such claims.

7.  Upon information and belief, the defendant insurance companies, as with Hurricane Irene, have denied, and will continue to deny SFIP flood claims relating to Hurricane Sandy based upon a misinterpretation or a misapplication of the term "basement" as used in the SFIP, as set forth in more detail in plaintiff's Second Cause of Action.

8.  The Class described herein as Class C is so numerous that joinder of all members as individual plaintiffs is impracticable.

9.  There are questions of law or fact - - particularly, the interpretation and application of the terms referred to above - - that are common to all members of the class.

10.  The claims of Patrick Donnelly, who as of the date of the filing of this Complaint stands in jeopardy of denial of his flood claim by the very same insurance company, on the basis of the very same misinterpretation of the SFIP, as representative party, are typical of the claims of the members of this class, in that all are asserting a challenge to the defendants' interpretation and application of the terms referred to above.

11.  The representative party will fairly and adequately protect the interests of the class, inasmuch as his interest in having the aforesaid terms interpreted and applied correctly is equally in the interests of all members of the class.

12.  The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the defendants.

13.  The prosecution of separate actions by individual members of the class would create a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of other members not parties to the adjudications, or which would substantially impair or  impede their ability to protect their interests.

14.  The questions common to the members of the class predominate over any questions affecting only individual members, such that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

WHEREFORE, the members of Class C demand judgment against the defendant insurance companies for compensatory damages, such declaratory relief as may be appropriate, prejudgment interest, attorneys fee, costs of suit, and such further relief as the Court may deem just and proper.

## NINTH CAUSE OF ACTION

### Breach of Contract  - Class C-I  (Jersey City)

1.   The allegations of all previous paragraphs of this Complaint are realleged and incorporated as though fully set forth herein.

2.   Class C-I is a sub-class of Class C, defined as consisting of the following: (1)  all individuals and entities that operated businesses or that owned real or personal property, including condominiums, located in the City of Jersey City during the period of Hurricane Sandy, (2) that made claims for damages from Hurricane Sandy under an SFIP issued by one of the defendant insurance companies, and (3)  and that had such claim denied, either as of the date of the filing of this Complaint or as the date of plaintiff's application for the certification of Class C, either in whole or in part, under Section III(A)(8) of the SFIP, based upon an interpretation or application of the policy provisions relating to the term "basement."

3.   The specific allegations of plaintiff's Eighth Cause of Action are hereby reasserted on behalf of Class C-I.

4.   Upon information and belief, property and business owners in the City of Jersey City suffered, and will continue to suffer a disproportionately high number of improper claim denials on the basis of the above-cited provisions of Section III(A)(8) of the SFIP.

5.  In the event that the certification of Class C is denied, plaintiff nevertheless requests the certification of Class C-I.

WHEREFORE, the members of Class C-I demand judgment against the defendant insurance companies for compensatory damages, such declaratory relief as may be appropriate, prejudgment interest, attorneys fee, costs of suit, and such further relief as the Court may deem just and proper.

### TENTH CAUSE OF ACTION

### Breach of Contract  - Class C-II  (Hoboken)

1.   The allegations of all previous paragraphs of this Complaint are realleged and incorporated as though fully set forth herein.

2.       2. Class C-II is a sub-class of Class C, defined as consisting of the following: (1) all individuals and entities that operated businesses or that owned real or personal property, including condominiums, located in the City of Hoboken during the period of Hurricane Sandy, (2) that made claims for damages from Hurricane Sandy under an SFIP issued by one of the defendant insurance companies, and (3)  and that had such claim denied, either as of the date of the filing of this Complaint or as the date of plaintiff's application for the certification of Class C, either in whole or in part, under Section III(A)(8) of the SFIP, based upon an interpretation or application of the policy provisions relating to the term "basement."

3.  The specific allegations of plaintiff's Eighth Cause of Action are hereby reasserted on behalf of Class C-II.

4.  Upon information and belief, property and business owners in the City of Hoboken suffered, and will continue to suffer a disproportionately high number of improper claim denials on the basis of the above-cited provisions of Section III(A)(8) of the SFIP.

5.  In the event that the certification of Class C is denied, plaintiff nevertheless requests the certification of Class C-II.

WHEREFORE, the members of Class C-II demand judgment against the defendant insurance companies for compensatory damages, such declaratory judgment as to coverage as may be appropriate, prejudgment interest, attorneys fee, costs of suit, and such further relief as the Court may deem just and proper.

## ELEVENTH CAUSE OF ACTION

### Class D  (Hurricane Sandy)

1.   The allegations of all previous paragraphs of this Complaint are realleged and incorporated as though fully set forth herein.

2.   Class D is defined as consisting of the following: (1)  all individuals and entities that operated businesses or that owned real or personal property, including condominiums, located in the State of New Jersey during the period of Hurricane Sandy, (2) that made claims for damages from Hurricane Sandy under an SFIP issued by one of the defendant insurance companies, and (3)  and that agreed to accept less than the full value of their claim in reliance upon inaccurate, negligent, and/or fraudulent statements and representations made by authorized agents of their respective insurance companies as to the interpretation and effect of the terminology of Section III(A)(8) of the SFIP relating to the term "basement" as set forth heretofore in plaintiff's Second Cause of Action.

3.   As with Hurricane Irene, numerous persons and entities insured during Hurricane Sandy have been given, and upon information and belief will continue to be given incorrect information

about the application of Section III(A)(8) to their property, often by the third party adjusters relied

upon by the insurance companies as set forth above.

4.   As a result of the misrepresentations on the part of the insurance companies and their agents and representatives, whether made negligently or with fraudulent intent, numerous insureds have settled, are in the process of settling, and will settle their claims for less than the amount to which they were entitled.

5.   The aforesaid conduct by the defendant insurance companies was negligent,  in breach of contract, and is in breach of the covenants of good faith and fair dealing.

6.   The aforesaid class is so numerous that joinder of all members as individual plaintiffs is impracticable.

7.   There are questions of law or fact - - particularly, the interpretation and application of the terms referred to above - - that are common to all members of the class.

8.   The claims of Patrick Donnelly as representative party are typical of the claims of the members of this class, in that all are asserting a challenge to the defendants' interpretation and application of the terms referred to above.

9.   The representative party will fairly and adequately protect the interests of the class, inasmuch as his interest in having the aforesaid terms interpreted and applied correctly is equally in the interests of all members of the class.

10.  The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the defendants.

11.  The prosecution of separate actions by individual members of the class would create a risk of adjudications with respect to individual members which would as a practical matter be

dispositive of the interests of other members not parties to the adjudications, or which would substantially impair or impede their ability to protect their interests.

12.   The questions common to the members of the class predominate over any questions affecting only individual members, such that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

WHEREFORE, the members of Class D demand judgment against the defendant insurance companies for compensatory damages, punitive damages, such declaratory relief as may be appropriate, prejudgment interest, attorneys fee, costs of suit, and such further relief as the Court may deem just and proper.

## TWELFTH CAUSE OF ACTION

### Class D-I  (Jersey City)

1.   The allegations of all previous paragraphs of this Complaint are realleged and incorporated as though fully set forth herein.

2.   Class D-I is a sub-class of Class D, defined as consisting of the following: (1)  all individuals and entities that operated businesses or that owned real or personal property, including condominiums, located in the City of Jersey City during the period of Hurricane Sandy, (2) that made claims for damages from Hurricane Sandy under an SFIP issued by one of the defendant insurance companies, and (3)  and  that agreed to accept less than the full value of their claim in reliance upon inaccurate, negligent, and/or fraudulent statements and representations made by authorized agents of their respective insurance companies as to the interpretation and effect of the terminology of Section III(A)(8) of the SFIP relating to the term "basement" as set forth heretofore in plaintiff's Second Cause of Action.

-24-

3.  The specific allegations of plaintiff's Eleventh Cause of Action are hereby reasserted on behalf of Class D-I.

4.  Upon information and belief, property and business owners in the City of Jersey City suffered, and will continue to suffer a disproportionately high number of instances of the improper claims handling discussed above on the basis of the above-cited provisions of Section III(A)(8) of the SFIP.

5.  In the event that the certification of Class D is denied, plaintiff nevertheless requests the certification of Class D-I.

WHEREFORE, the members of Class D-I demand judgment against the defendant insurance companies for compensatory damages, punitive damages, such declaratory relief as may be appropriate, prejudgment interest, attorneys fee, costs of suit, and such further relief as the Court may deem just and proper.

## THIRTEENTH CAUSE OF ACTION

### Class D-II  (Hoboken)

1.   The allegations of all previous paragraphs of this Complaint are realleged and incorporated as though fully set forth herein.

2.  Class D-II is a sub-class of Class D, defined as consisting of the following: (1)  all individuals and entities that operated businesses or that owned real or personal property, including condominiums, located in the City of Hoboken during the period of Hurricane Sandy, (2) that made claims for damages from Hurricane Sandy under an SFIP issued by one of the defendant insurance companies, and (3)  and  that agreed to accept less than the full value of their claim in reliance upon inaccurate, negligent, and/or fraudulent statements and representations made by authorized agents

of their respective insurance companies as to the interpretation and effect of the terminology of Section III(A)(8) of the SFIP relating to the term "basement" as set forth heretofore in plaintiff's Second Cause of Action.

3.  The specific allegations of plaintiff's Eleventh Cause of Action are hereby reasserted on behalf of Class D-II.

4.  Upon information and belief, property and business owners in the City of Jersey City suffered, and will continue to suffer a disproportionately high number of instances of the improper claims handling discussed above on the basis of the above-cited provisions of Section III(A)(8) of the SFIP.

5.  In the event that the certification of Class D is denied, plaintiff nevertheless requests the certification of Class D-II.

WHEREFORE, the members of Class D-II demand judgment against the defendant insurance companies for compensatory damages, punitive damages, such declaratory relief as may be appropriate, prejudgment interest, attorneys fee, costs of suit, and such further relief as the Court may deem just and proper.

/s/  *Jeffrey A. Bronster*

_____

JEFFREY A. BRONSTER

Dated:   Union City, New Jersey
             December 11, 2012

-26-