**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

| | | |
|---|---|---|
| PATRICK DONNELLY, individually and on behalf of a class of similarly situated persons and entities, | : : : | |
| | : | CIVIL ACTION NO.: |
| Plaintiff | : | 2:12-cv-07629-ES-SCM |
| | : | |
| versus | : | |
| | : | |
| NEW JERSEY RE-INSURANCE COMPANY; ASSURANT INSURANCE GROUP (d/b/a American Bankers Insurance Company of Florida); FIDELITY NATIONAL PROPERTY & CASUALTY INSURANCE COMPANY (also d/b/a Fidelity National Property & Casualty Insurance Company); HARTFORD FIRE INSURANCE COMPANY; LIBERTY MUTUAL FIRE INSURANCE COMPANY; SELECTIVE INSURANCE COMPANY OF AMERICA; PHILADELPHIA CONTRIBUTIONSHIP INSURANCE COMPANY; STATE FARM FIRE AND CASUALTY COMPANY; TRAVELERS INSURANCE COMPANIES (d/b/a Standard Fire Insurance Company); and ABC INSURANCE COMPANIES 1-10 (being fictitious names) | : : : : : : : : : : : : : : : : : | |
| | : | |
| Defendants | : | |

_____

**MEMORANDUM IN SUPPORT OF DEFENDANT'S,**
**NEW JERSEY RE-INSURANCE COMPANY'S,**
**MOTION TO DISMISS PURSUANT TO F.R.Civ.P. 12(b)(6)**

NOW INTO COURT, through undersigned counsel, comes Defendant, New Jersey Re-Insurance Company ("New Jersey Re"), a Write-Your-Own ("WYO") Program carrier participating in the United States government's National Flood Insurance Program ("NFIP"), pursuant to the National Flood Insurance Act of 1968 ("NFIA"), as amended,[1] appearing herein in its fiduciary[2] capacity as the fiscal agent of the United States,[3] to submit this Memorandum in

_____

[1] 42 U.S.C. § 4001, *et seq*
[2] 44 C.F.R. §62.23(f).

Support of its Motion to Dismiss pursuant to F.R.Civ.P. 12(b)(6), for the reasons contained herein, to wit:[4]

---

[3] 42 U.S.C. §4071(a)(1); *Gowland v. Aetna Cas. & Surety Co.*, 143 F.3d 951, 953 (5th Cir.1998).

[4]  The instant motion is only being brought on behalf of New Jersey Re-Insurance Company and will only be directed to the Plaintiff's allegations against New Jersey Re-Insurance.  A separate Rule 12 motion will be brought on behalf of all other Defendants, as the only Defendant with whom Patrick Donnelly is in privity of contract is New Jersey Re-Insurance, hence the issues and reasons for dismissal are different.

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................... iv

ARGUMENT ...............................................................................................................................1

PRELIMINARY STATEMENT REGARDING THE NFIP ........................................................1

OVERVIEW OF THE COMPLAINT ........................................................................................3

F.R.CIV.P. 12(B)(6) STANDARD ............................................................................................5

"BASEMENT" DEFINITION AND LIMITATIONS ...............................................................10

PLAINTIFF'S EXTRA-CONTRACTUAL CLAIMS ...............................................................17

CONCLUSION ...........................................................................................................................21

CERTIFICATE OF SERVICE ....................................................................................................22

## TABLE OF AUTHORITIES

**United States Supreme Court:**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................6

*Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380 (1947) ............................3, 17, 19, 20

*Heckler v. Community Health Services of Crawford County, Inc.*,
       467 U.S. 51 (1984)........................................................3, 18, 19, 20

*Office of Personnel Management v. Richmond*, 496 U.S. 414 (1990)............................3

**Federal Statutes:**

42 U.S.C. § 4001 .....................................................................................................12

42 U.S.C. § 4013(a) ...........................................................................................11, 17

**Code of Federal Regulations:**

44 C.F.R.§61.13(a)....................................................................................................2

44 C.F.R. §61.13(d) ...............................................................................................2, 21

44 C.F.R. §62.23(i)(1)...............................................................................................3

44 C.F.R. § 62.23(i)(6) ..............................................................................................2

44 C.F.R. Part 61, App. A(1) ....................................................................................4

44 C.F.R. Part 61, App. A(1), Art. II ..............................................................7, 8, 11

44 C.F.R. Pt. 61, App. A(1), (2), and (3) ..................................................................2

44 C.F.R. Pt. 61, App. A(1), Art. VII(D) ..................................................................2

44 C.F.R. Pt. 62, App. A ........................................................................................2, 3

44 C.F.R. Pt. 62, App. A, Art. III(D)(1) ...................................................................2

44 C.F.R. Pt. 62, App. A, Art. III(C)(1) ...................................................................2

Article II(B)(5)............................................................................................1

Article III ..................................................................................2, 13, 17, 18, 21

Article VII(J)(8).......................................................................................20

Article III(A)(8).....................................................................................2, 11

Article III(B)(3) ........................................................................................2

**Federal Rules of Civil Procedure:**

F.R.Civ.P. 8...............................................................................................8

F.R.Civ.P. 8(a)(2)....................................................................................8, 10

F.R.Civ.P. 9(b)..........................................................................................9

F.R.Civ.P. 12(b)(6) ...........................................................................1, 5, 8, 22

**United States Courts of Appeals:**

*Buck v. Hampton Twp. School Dist.*, 452 F.3d 256 (3rd Cir. 2006) ...................................7

*C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co.*, 386 F.3d 263 (3rd Cir. 2004)..................................18

*DiMare v. MetLife Ins. Co.*, 359 Fed.Appx. 324 (3rd Cir. 2010) ...............................9, 10

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3rd Cir. 2009) ........................................6

*Frederico v. Home Depot*, 507 F.3d 188 (3rd Cir. 2007) .........................................9, 10

*Gowland v. Aetna Cas. & Surety Co.*, 143 F.3d 951 (5th Cir.1998)………………………….ii, 3

*King v. Casa Grande Condominium Ass'n, Inc.*,
           416 Fed.Appx. 363 (5th Cir. 2011)..................................................1, 6, 15, 17, 21

*Linder and Assoc., Inc. v. Aetna Cas. and Surety Co.*, 166 F.3d 547 (3rd Cir. 1999)...............1, 13

*Lum v. Bank of America*, 361 F.3d 217 (3rd Cir. 2004) ............................................10

*Mayer v. Belichick*, 605 F.3d 223 (3rd Cir. 2010) ...............................................6

*McGair v. American Bankers Ins. Co. of Florida*, 693 F.3d 94 (1st Cir. 2012).............................2

*Nelson v. Becton*, 929 F.2d 1287, 1289-90 (8th Cir. 1991) ................................13, 15, 16

*Palmieri v. Allstate Ins. Co.*, 445 F.3d 179 (2nd Cir. 2006) ................................................... 2, 3

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192 (3rd Cir. 1993) ....... 6, 7

*Phillips v. County of Allegheny*, 515 F.3d 224 (3rd Cir. 2008) ................................................. 6

*Richmond Printing, LLC v. Director Federal Emergency Management Agency,*
    72 Fed.App. 92 (5th Cir. 2003) .......................................................................... 3, 19

*Ruddy v. U.S. Postal Service*, 455 Fed.Appx. 279 (3rd Cir. 2011) ............................................. 6, 7

*Santiago v. Warminster Township*, 629 F.3d 121 (3rd Cir. 2010) .............................................. 6

*Suopys v. Omaha Prop. & Cas.*, 404 F.3d 805 (3rd Cir. 2005) .............................................. 2, 3, 20

*U.S., ex rel. Pilecki-Simko v. Chubb Inst.*, 443 Fed.Appx. 754 (3rd Cir. 2011) ........................... 6

*Van Holt v. Liberty Mutual Fire Ins. Co.*, 163 F.3d 161 (3rd Cir. 1998) ....................................... 2

*Wadhwa v. Secretary, Dept. of Veterans Affairs*, 2012 WL 5974233 (3rd Cir. Nov. 30, 2012) ..... 6

*Wagner v. Director, FEMA*, 847 F. 2d 515 (9th Cir. 1988) .......................................................... 20

*West v. Harris,* 573 F.3d 873 (5th Cir, 1978) ...................................................................... passim

## United States District Courts:

*3608 Sounds Ave. Condo. Assoc. v. South Carolina Ins. Co.*, 58 F.Supp.2d 499 (D.N.J. 1999) ................. 3

*Eddins v. Omega Ins. Co.*, 825 F.Supp. 752 (N.D. Miss. 1993) ................................................... 3

*Gilmore v. Reilly*, 2010 WL 1462876 (D.N.J. Apr. 9, 2010) ....................................................... 6

*Miller v. Selective Ins. Co. of Am.*, 2009 WL 5033952 (D.N.J. Dec.15, 2009) ......................... 7, 19

*Moore & Moore Trucking, LLC v. Beard*, 2013 WL 828344 (E.D.La. Mar. 6, 2013) ................. 21

*Pepe v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 2011 WL 4916290 (D.N.J. Oct. 17, 2011) .................. 19

*Sutor v. FEMA*, 2009 WL 2004375 (E.D.Pa. July 9, 2009) ........................................................ 21

*TAF, LLC, v. Hartford Fire Ins. Co.*, 549 F.Supp.2d 1282 (D.Colo. 2008) ................................. 15

*Texas Landowners Rights Assn. v. Harris*, 453 F.Supp. 1025 (D.D.C. 1978) .............................. 13

*Uddoh v. Selective Ins. Co.*, 2012 WL 2979052 (D.N.J. July 20, 2012) ................... 14, 15, 19, 20

**Miscellaneous:**

48 Fed.Reg. 39066-39068 (August 29, 1983), 1983 WL 119795 ...................................................12

5B Charles A. Wright & Arthur R. Miller,
        *Federal Practice & Procedure* § 1357 (3d ed. 2004).................................................7

65 FR 60758, 60761, 2000 WL 1508030 ....................................................................................12

Argument

Plaintiff's Complaint focuses entirely on his attempt to recover for damage to the basement of his building under the Standard Flood Insurance Policy ("SFIP"), together with vague allegations that unspecified misrepresentations purportedly were made by New Jersey Re's representative regarding the scope of coverage for his basement.  The SFIP provides limited coverage for only certain items in a "basement," defined as an area "having its floor below ground level (subgrade) on all sides."  44 C.F.R. Part 61, Appendix A(1).  The Third Circuit has found this definition to be clear and unambiguous, holding that "[i]f a person must step up when exiting the lower level to the outside, the lower level is below ground level and, thus, is a basement. … This is true even if one must step up only an inch when going outside."  *Linder and Assoc., Inc. v. Aetna Cas. and Surety Co.*, 166 F.3d 547, 550 (3rd Cir. 1999).  Plaintiff's claims should be dismissed as a matter of law under Rule 12(b)(6) because: (1) he fails to allege any facts regarding his basement that would be sufficient, if true, to find coverage under the plain language of the SFIP as applied in *Linder*, which is  controlling Third Circuit authority; (2) documents and photographs incorporated by reference in the Complaint, which can properly be considered on this motion, establish that Plaintiff's lowest floor is clearly subgrade, and thus his lowest floor is a "basement" under the SFIP, as applied in *Linder*; and (3) his vague extracontractual allegations, to the extent they attempt to plead fraud or misrepresentation, are preempted by federal law under controlling Third Circuit authority and also fail under Rule 9(b).

Preliminary Statement Regarding the NFIP

This is not a typical insurance dispute.  Instead, it is a lawsuit seeking federal funds under the NFIP. This cause of action centers around the definition of "basement" as provided by Article II(B)(5) of the Standard Flood Insurance Policy ("SFIP") and what limited coverage that

1

is available under Articles III(A)(8) and III(B)(3) of the SFIP for areas classified as a "basement." The Article III coverage delineates specific items located in a "basement" relating to building and personal property damage for which the limited coverage is provided.

The NFIP is a creation of Congress, "administered by the Federal Emergency Management Agency ("FEMA") and backed by the federal treasury. . . ." *Van Holt v. Liberty Mutual Fire Ins. Co.*, 163 F.3d 161, 165-66 (3rd Cir. 1998) and *Suopys v. Omaha Prop. & Cas.*, 404 F.3d 805, 807 (3rd Cir. 2005). *See also McGair v. American Bankers Ins. Co. of Florida*, 693 F.3d 94, 95-96 (1st Cir. 2012); *Palmieri v. Allstate Ins. Co.*, 445 F.3d 179,183, 187 (2nd Cir. 2006); *West v. Harris,* 573 F.2d 873, 881 (5th Cir, 1978); and 44 C.F.R. Pt. 62, App. A, Art. III(D)(1). All flood loss claims presented under the NFIP are paid directly with U.S. Treasury funds. *See* 44 C.F.R. Pt. 62, App. A, Art. III(D)(1), *Van Holt*, 163 F.3d at 165-66 and *Suopys*, 404 F.3d at 807. This includes defense costs. *See* 44 C.F.R. § 62.23(i)(6); *Van Holt*, 163 F.3d at 165. Further, a WYO Program carrier, such as New Jersey Re, receives a fee based upon a percentage of the payment of any proper flood claims. *See* 44 C.F.R. Pt. 62, App. A, Article III(C)(1).

Most importantly, the SFIP is written by the federal government – not New Jersey Re. *See* 44 C.F.R. Pt. 61, App. A(1), (2), and (3); 44 C.F.R.§61.13(a). As such, both the SFIP and the NFIP are strictly regulated by federal law and FEMA. New Jersey Re may not alter, amend or waive any provision or condition of the SFIP or the NFIP. *See* 44 C.F.R. Pt. 61, App. A(1), Art. VII(D); 44 C.F.R. §61.13(d). The sole authority is the Federal Insurance Administrator, and the waiver must be express and in writing. *Id.*

The SFIP in this matter is an SFIP Dwelling Form found at 44 C.F.R. Pt. 61, App. A(1), issued by New Jersey Re to Patrick Donnelly ("Plaintiff"), pursuant to its authority as a WYO

Program carrier under the *Arrangement*[5] between itself and FEMA.  As the fiscal agent of the federal government, every payment New Jersey Re makes pursuant to an SFIP claim is fully made with U.S. Treasury funds and all payments are "binding" upon the federal government.  *See* 44 C.F.R. §62.23(i)(1).[6]  Due to the statutory scheme of the NFIP and the fact that U.S. Treasury funds are at stake, strict adherence to the conditions precedent for the payment of a claim is constitutionally required.  *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384-85 (1947); *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 65 (1984); *Office of Personnel Management v. Richmond*, 496 U.S. 414, 426 (1990);  *Suopys*, 404 F.3d at 809. *See also Palmieri v. Allstate Ins. Co.*, 445 F.3d 179,183, 187 (2nd Cir. 2006); *Gowland*, 143 F.3d at 953.  To make payments not in strict compliance with the SFIP would be contrary to Congress' mandate and would violate the Appropriations Clause of the constitution.  *Gowland*, 143 F.3d at 955.

## Overview of the Complaint

In his Complaint, the Plaintiff, Patrick Donnelly, seeks to assert claims individually and as a putative class representative against New Jersey Re and eight other insurance companies for breach of contract and alleged misrepresentation arising out of flood insurance claims filed in the wake of Hurricanes Irene and Sandy.

At ¶¶ 1, 2, and 4 of the "Jurisdiction and Parties" section of his Complaint (Doc. No. 1), Plaintiff, Patrick Donnelly, alleges that he resides at 245 Grove Street, Jersey City, New Jersey, and that he is bringing claims for Hurricane Irene in 2011 and Hurricane Sandy in 2012.  New

---

[5]  The "Arrangement" is a codified federal law found at 44 C.F.R. Pt. 62, App. A.

[6] As recognized by many cases including *3608 Sounds Ave. Condo. Assoc. v. South Carolina Ins. Co.*, 58 F.Supp.2d 499 (D.N.J. 1999) and *Eddins v. Omega Ins. Co.*, 825 F.Supp. 752 (N.D. Miss. 1993), pursuant to the statutory scheme, the higher the claim payment, the more the WYO Program carrier is paid by FEMA.  Therefore, New Jersey Re has absolutely no incentive <u>not</u> to pay a claim under the NFIP, except where, as here, the insured's claims do not fall within the parameters of the NFIP.

Jersey Re-Insurance Company is alleged to have issued flood insurance policies pursuant to FEMA's Write Your Own ("WYO") program within the State of New Jersey.

In his "First Cause of Action" alleging breach of contract against New Jersey Re, at ¶ 1, the Plaintiff avers that his home in Jersey City was covered by a FEMA flood insurance policy issued by New Jersey Re-Insurance, Policy No. 00N0105734.  A copy of Mr. Donnelly's Flood Dwelling Policy Endorsement Declaration Page for the 2011-2012 year for Policy No. 00N0105734 is attached as "Exhibit A."[7]

Plaintiff alleges that his flood insurance claim was denied pursuant to a February 27, 2012, letter from James A. Sadler, the Director of Claims of the NFIP, based on an "erroneous" classification of the lowest floor of his building as a "basement," as defined in the FEMA flood policy.  This is alleged to be a breach of the contract.  Mr. Sadler's letter is attached as "Exhibit B."  (Complaint, ¶¶ 4-5, p. 5.)

In reality, "the FEMA flood policy" referred to is known as a Standard Flood Insurance Policy and is a codified federal regulation found at 44 C.F.R. Part 61, Appendix A(1). "Basement" is a defined term in the SFIP, at Article II "Definitions," being "any area of the building, including any sunken room or sunken portion of a room, <u>having its floor below ground lever (subgrade) on all sides</u>."  (Emphasis added.)

Plaintiff asserts his own claim for breach of contract, and also seeks to represent various proposed classes of policyholders whose "basement" claims were denied under the terms of the SFIP.  These proposed classes consist of residents of the State of New Jersey, or of Jersey City or Hoboken, who made flood insurance claims as a result of either Hurricane Irene or Hurricane Sandy.  (*Id.*, Second through Thirteenth Causes of Action, at pp. 5-26.)

---

[7] Please recall the SFIP is a codified federal regulation found at 44 C.F.R. Part 61, App. A(1), which the court may choose to take judicial notice.

Plaintiff also makes allegations for intentional misrepresentation, negligent misrepresentation and/or negligence relating to the interpretation of SFIPs that had been issued to putative class members.  Plaintiff alleges that the insureds purportedly relied on "inaccurate, negligent and/or fraudulent statements and representations made by authorized agents of their respective insurance companies" with respect to the interpretation of the "basement" provisions of the SFIP.  (*Id.*, Fifth Cause of Action, ¶ 2, p. 12.)  Plaintiff further alleges that "[a]s a result of the misrepresentations on the part of the insurance companies and their agents and representatives, whether made negligently or with fraudulent intent, numerous insureds settled their claims for less than the amount to which they were entitled, and therefore never actually received denial letters."  (*Id.*, ¶ 4, p. 12.)  Plaintiff alleges that such purportedly incorrect information was often provided by "the third party adjusters relied upon by the insurance companies."  (*Id.*, ¶ 3, p. 12.)  Plaintiff claims that this conduct "was negligent, in breach of contract, and in breach of the covenants of good faith and fair dealing."  (*Id.*, ¶ 5, p. 12.)  These claims are asserted on behalf of a putative New Jersey statewide class of policyholders who made claims from Hurricane Irene.  The same allegations are incorporated by reference into subclasses of policyholders in Jersey City and Hoboken who made Hurricane Irene claims.  (*Id.*, Sixth Cause of Action, ¶ 3, p. 14; Seventh Cause of Action, ¶ 3, p. 15.)  Similar claims with respect to similarly-defined Hurricane Sandy classes are included in the Eleventh, Twelfth and Thirteenth Causes of Action.

<u>F.R.Civ.P. 12(b)(6) Standard</u>

Within the Third Circuit and the District of New Jersey, a court deciding a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted must "accept all factual allegations as true, construe the complaint in the light most

favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Wadhwa v. Secretary, Dept. of Veterans Affairs*, 2012 WL 5974233 *2 (3rd Cir. Nov. 30, 2012) quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3rd Cir. 2009) quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3rd Cir. 2008). Accord *Gilmore v. Reilly*, 2010 WL 1462876 (D.N.J. Apr. 9, 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Accord *Wadhwa*, 2012 WL 5974233 at *2. Alleging "sufficient factual matter" to overcome a motion to dismiss requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Within the Third Circuit, to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, the court must "take note of the elements a plaintiff must plead to state a claim," then identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *U.S., ex rel. Pilecki-Simko v. Chubb Inst.*, 443 Fed.Appx. 754, 760 (3rd Cir. 2011) quoting *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3rd Cir. 2010). As is detailed herein, Mr. Donnelly's Complaint is rife with conclusory allegations which are not sufficiently detailed with the necessary factual backing to give the allegations credence.

In deciding a motion to dismiss for failure to state a claim, a court must consider only the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents. *Ruddy v. U.S. Postal Service*, 455 Fed.Appx. 279, 283 (3rd Cir. 2011); *Mayer v. Belichick*, 605 F.3d 223, 230 (3rd Cir. 2010); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3rd Cir. 1993).

The court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. *Pension Benefit Guar. Corp.*, 998 F.2d at 1196. The court may also consider "any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. School Dist.*, 452 F.3d 256, 260 (3rd Cir. 2006) quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004).

In *Ruddy*, the district court properly relied on Ruddy's EEOC file, which Ruddy had referenced in his complaint and which was "integral to his claim." *Ruddy*, 455 Fed.Appx. at 283. In the matter at bar, in his Complaint, Plaintiff references his flood policy and flood claim, indeed, these things are integral to his suit, as the gravamen of his Complaint is the alleged misapplication of certain provisions of the SFIP which resulted in an alleged improper denial of his flood claim. A copy of his policy's Declarations Page is attached as an exhibit. The Declarations Page is part of the flood policy. See 44 C.F.R. Part 61, App. A(1), Art. II, Definition 10. Mr. Donnelly references a letter from James Sadler, the Claims Director of the NFIP. Again, as Plaintiff states that this is the letter which denied his flood claim, said letter is also integral to the Complaint. Said letter is attached as an exhibit hereto. The Plaintiff references his flood claim in his Complaint and the allegedly improper denial thereof. See First Cause of Action, ¶ 5 ("denial of plaintiff's claim"). Therefore, photographs from Mr. Donnelly's claims file illustrating the lower level of his home are also properly attached as exhibits, as these photos demonstrate why the Plaintiff's referenced flood claim was denied and are at the heart of the Plaintiff's alleged harm. Mr. Sadler's letter also references review of photos of the Plaintiff's "basement" area. Moreover, all of the foregoing exhibits are "integral" to the Plaintiff's claim as

7

alleged on the face of the Complaint.  Pursuant to Third Circuit law, the foregoing exhibits are permissible in a Rule 12(b)(6) motion, although even without considering those materials, the Complaint should be dismissed under *Twombly* and *Iqbal*.

<u>The Lack of Sufficient Factual Matter in the Class Action Complaint and the Futility of Success</u>

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  A plaintiff's obligation to provide the basis of any entitlement to relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.  As the Court stated, a plaintiff must, on the face of his pleading, allege sufficient facts to move his claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  As is demonstrated herein, Plaintiff is not "entitled to relief," as his claims are not plausible and they lack sufficient factual specificity to meet the requirements of Rule 8. Additionally, as will be shown herein, Plaintiff's claims are legally impossible of success.

Throughout his Complaint, the Plaintiff states that "in numerous instances" claims were wrongfully denied due to the misapplication of the basement limitations, and, most importantly, his own claim was improperly denied for that reason.  Yet the Plaintiff provides no factual support for this allegation.  He fails to allege any facts regarding his basement, including, most importantly, facts pertaining to whether his basement has "its floor below ground level (subgrade) on all sides."  44 C.F.R. Part 61, App. A(1), Art. II.  A pleading must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable claim on the assumption that all the allegations in the complaint are true. *Twombly*, 550 U.S. at 555.  Mr. Donnelly gives us a "suspicion" of a claim, but not the facts to support one which would satisfy the pleading requirements of F.R.Civ.P. 8, *Twombly*, and *Iqbal*.

Indeed, Mr. Donnelly does not even aver why the classification of the lower level of his home by James Sadler as a basement was "erroneous." This fact is the paramount issue associated with the Plaintiff's Complaint, yet the Complaint is silent on that matter. The Complaint merely states the conclusory allegation that the basement finding was erroneous. In *Iqbal*, the plaintiff's claims were dismissed due to their "conclusory nature." 556 U.S. at 681. Unless the Plaintiff can clearly and coherently provide a factual basis for his allegation that the finding of the lower level of his home is a "basement" was erroneous under the SFIP's definition of "basement," his entire suit must fail. The basement issue is the hub around which the remainder of the Complaint revolves.

In the Complaint's Third and Fourth Causes of, at ¶ 4 of each, the Plaintiff prefaces his claims' denial allegations on "information and belief." As stated, in *Iqbal*, the plaintiff's claims were denied due to their "conclusory nature." 556 U.S. at 681. "Information and belief" are conclusory at best; factual they are not. If indeed Mr. Donnelly does have "information," it was incumbent upon him to specify that information to provide sufficient factual matter to support his allegations.

Plaintiff's Fifth Cause of Action is aimed at those who are alleged to have accepted less than full value of their claims based on "fraudulent statements and representations" by various entities. F.R.Civ.P. 9(b) requires that fraud be pled "with particularity the circumstances constituting fraud or mistake."

Within the Third Circuit, to satisfy Rule 9(b)'s enhanced pleading requirements, a plaintiff "must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *DiMare v. MetLife Ins. Co.*, 359 Fed.Appx. 324, 329 (3rd Cir. 2010) quoting *Frederico v. Home Depot*, 507

F.3d 188, 200 (3rd Cir. 2007) quoting *Lum v. Bank of America*, 361 F.3d 217, 223-24 (3rd Cir. 2004).  In *DiMare*, the court ruled that lack of descriptions of "any representations whatsoever" and the failure "to disclose the identity of the person who made the allegedly fraudulent misrepresentations" was such that MetLife "was not placed 'on notice of the precise misconduct with which it was charged.'"  *DiMare*, 369 Fed.Appx. at 330 quoting *Frederico*, 507 F.3d at 200-01.

In the matter at bar, Mr. Donnelly does not provide any factual matter of even one instance of any "fraudulent statements and representations" made by anyone connected with New Jersey Re or any other entity.  Again, Plaintiff engages in a general "conclusory" allegation without any necessary factual support to bolster the allegation.  We are not told who made these alleged statements, what was said, when it was said, or to whom it was said.  Especially in the context of alleged fraud or misrepresentation, it is incumbent upon the Plaintiff to provide specific facts to support his allegations in the context of Rule 9's enhanced pleading standards. Indeed, Plaintiff's "conclusory" allegations regarding fraudulent conduct and misrepresentations do not even meet Rule 8's standards for specificity, which are not as rigorous as Rule 9's.

<u>"Basement" Definition and Limitations</u>

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  A plaintiff's obligation to provide the basis of any entitlement to relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

While the law from the highest court in the land is clear that "formulaic recitations" of any particular cause of action will not suffice to state a claim, that is exactly the type of pleading

10

engaged in by the Plaintiff.  For example, in his Second Cause of Action, the Plaintiff recites language from the SFIP (a federal regulation itself) regarding the basement definition and Article III(A)(8) limitations which apply to areas classified as a "basement," then merely states that claims were denied based on "either a misinterpretation or a misapplication" of the term "basement."  See, ¶ 10 of Second Cause of Action at p.8 of Complaint.  However, the Plaintiff provides no explanation or factual basis of how the basement provision of the SFIP was misinterpreted or misapplied.

However, an explanation of the basement provisions <u>was</u> provided by James Sadler, the NFIP Director of Claims, in the February 27, 2012, letter which is "Exhibit B," and directly referenced in the Plaintiff's Complaint.  Therefore, Mr. Donnelly's underlying claim has been directly examined by FEMA, the agency charged by Congress with creating the "terms and conditions of insurability" of the SFIP and administering the NFIP.  42 U.S.C. § 4013(a).  Mr. Donnelly provides us no factual rationale whatsoever to challenge the findings of Mr. Sadler.

As stated in the Sadler letter, after review of claim file photographs of "the terrain surrounding all sides of the structure including review of the slab in relationship to the adjacent grade," the "review confirmed NJRI's position that the lowest level constitutes a sub-grade basement as defined by [the SFIP] …."  Photographs from the Plaintiff's claim file which depict "the terrain surrounding all sides of the structure including review of the slab in relationship to the adjacent grade," are attached *in globo* as "Exhibit C," and are directly referenced in the Sadler letter and are integral to Mr. Donnelly's claim.  These photos <u>clearly</u> demonstrate that in fact the Plaintiff's home's lowest level does meet the SFIP basement definition, because the lower level has "its floor below ground level (subgrade) on all sides."  44 C.F.R. Part 61, App. A(1), Art. II.  One must step down from ground level to enter the lowest level of the home in

every photo.  Therefore, Mr. Donnelly's claim was properly denied based on the basement definition and the limitations which accompany such a finding. The Plaintiff's Complaint fails to state a claim upon which relief may be granted.

The "basement limitation" of the SFIP was originally added by amendment in 1983 in an effort to reduce the Federal Government's cost of providing flood insurance and to avoid increasing rates.[8]  The only comment received when FEMA last amended the SFIP was a recommendation that FEMA add refrigerators to the list of items the SFIP will cover in a "basement," since the SFIP provides coverage for freezers.  In response to this comment, FEMA explained that:

> We do not see any justification in adding flood coverage for more items in basements, which are at higher flood risk than other parts of a building.  We developed the current list of items we will cover in basements based on several factors.  First, we wanted to cover items essential for the operation and maintenance of the building itself, such as machinery and mechanical equipment.  Second, there are certain items such as freezers that seem to be better suited for basements than in other parts of a dwelling since there are few alternative locations for freezers.  Third, we have resisted, appropriately, offering coverage for items such as beds, sofas, recreational items, normal kitchen equipment such as stoves and refrigerators in basements since flood insurance coverage for such items might be at odds with the NFIP's floodplain management efforts: The NFIP would on the one hand be trying to guide development and occupancy away from the riskier flood-prone areas while inviting such uses with its coverage.  We have decided not to add refrigerators to the list of what we cover in basements.

See 65 FR 60758, 60761, 2000 WL 1508030 (Thursday, October 12, 2000). Therefore, there is no question that FEMA has historically sought to limit coverage in basements in order to maintain the goals of providing economically affordable coverage for flood damages.  Limiting coverage in basements is in line with the NFIP's dual purpose of providing affordable flood insurance while encouraging sound flood plain management.   See 42 U.S.C. § 4001,

---

[8] *See*, 48 Fed.Reg. 39066-39068 (August 29, 1983), 1983 WL 119795.

"Congressional findings and declaration of purpose."   The availability of low cost flood insurance tied to sound flood plain management requirements in the NFIP have been characterized as a "carrot and a stick" inducement.  *Texas Landowners Rights Assn. v. Harris*, 453 F.Supp. 1025, 1030 (D.D.C. 1978).

As will be shown below, there have been several attempts in the history of the NFIP to challenge the SFIP's basement provisions by ignoring FEMA's established position and the express terms of the SFIP.  However, these attempts have failed and the Courts have <u>uniformly</u> upheld FEMA's definition of a basement as found in the SFIP.  These decisions form the basis of the Defendant's position in this matter.  Accordingly, under the following authority, Plaintiff's building's lower level meets the definition of a "basement" and coverage was properly limited under the terms of the SFIP found in Article III of the policy.

Moreover, this same basement issue, involving this same basement definition, has been litigated in New Jersey district court and at the Third Circuit, where there is controlling authority directly on point.  In *Linder and Assoc., Inc. v. Aetna Cas. and Surety Co.*, 166 F.3d 547 (3rd Cir. 1999), the plaintiff argued that only three sides of his building's lower level were below ground level.  *Id.*, at 549.  Moreover, Mr. Linder argued that "ground level" should be defined as the natural grade existing at the time the building was built, not the surface level at the time of the flood.  *Id.*, at 549-50.  After losing at the district court level on the foregoing issues, Mr. Linder appealed to the Third Circuit, which concluded "that the SFIP clearly and unambiguously precludes coverage for damages in Linder's lower level.  *Id.*, at 550.  The court cited approvingly to *Nelson v. Becton*, 929 F.2d 1287, 1289-90 (8th Cir. 1991), which also found the basement exclusion to be clear and unambiguous.  **The Third Circuit held that "[i]f a person must step up when exiting the lower level to the outside, the lower level is below ground level and,**

**thus, is a basement. … This is true even if one must step up only an inch when going outside."** *Linder*, 166 F.3d at 550.  (Emphasis added.)  <u>As the photos comprising "Exhibit C" make clear, one must step up far more than an inch to exit Mr. Donnelly's lowest level</u>.  *Linder* therefore controls and is dispositive of the instant matter.

Linder also argued that "ground level" is ambiguous and should be defined as the existing grade at the time the building was originally built, not the level which existed at the time of the flood.  *Id.*, at 551.  The court found this argument to be unreasonable, finding that the only reasonable interpretation was the "ground level" which existed at the time of the flood.  The court reasoned that "[c]overage under a flood insurance policy is predicated upon the occurrence of a flood.  There cannot be a flood unless water rises above and flows over the existing ground level.  It only makes sense, therefore, to equate 'ground level' in the flood insurance policy as the ground level that was actually flooded, i.e., as the ground level at the time of the flood."  *Id.*  In the matter at bar, even a cursory review of the photographs comprising "Exhibit C" show that one must step down to enter the lower level of Mr. Donnelly's home from the adjacent "ground level."  There is no further allegation which Mr. Donnelly could credibly make which would change the physical landscape of his property.  Any such attempt would truly be futile.

This Honorable Court has also had occasion to rule upon the basement exclusion within the last year and has ruled in accord with the Third Circuit's controlling precedent in *Linder*.  In *Uddoh v. Selective Ins. Co.*, 2012 WL 2979052 *4 (D.N.J. July 20, 2012), Judge Martini found "the undisputed facts establish that the lower level of Plaintiff's building was properly re-classified as a basement."  It was acknowledged that the first floor of the building was below ground level on all sides.  However, Mr. Uddoh argued that his lower level could not be a basement, as it was above the natural grade of the street which existed when the building was

built.  The court cited to *Linder*, ruling that the Third Circuit had explicitly rejected the theory advanced by Mr. Uddoh.  As the lower level was eight inches below the ground level, the lower level was properly classified as a basement.  *Id.*

Courts in other jurisdictions have also ruled on the basement exclusion. The court in *King v. Casa Grande Condominium Ass'n, Inc.*, 416 Fed.Appx. 363 (5th Cir. 2011) addressed the issue of a lowest floor enclosure.  Based on an elevation certificate that showed the floor of the property to be 1.8 feet lower than adjacent ground level grade on all side and contractors' confirming testimony, the Fifth Circuit concluded that plaintiffs did not provide sufficient evidence to establish that the subject property was not a basement as defined by the SFIP.  *Id.*, at 368-369. Notably, the Fifth Circuit relied in part on *Linder*, holding that where a person must step up when exiting a building, the level is below ground level and therefore a basement. *Id.*, at 369.

In *TAF, LLC, v. Hartford Fire Ins. Co.*, 549 F.Supp.2d 1282 (D.Colo. 2008), the court held that lower level of commercial building was a "basement" under SFIP coverage even though the concrete landing at the exit of lower level had been excavated  and was substantially level to the door.  *Id.*, at 1287-1288. In reaching this conclusion, the *TAF* court stated that a person exiting the building onto landing had to walk eight to ten feet and then immediately climb up eight steps in order to leave building.  *Id.*  The court held that "the entrance to TAF's building is not accessible unless a person proceeds down eight steps into an excavated concrete way that is a very short distance from the door." *Id.*, at 1288.  For these reasons, the court determined it was a basement.

In *Nelson v. Becton*, 929 F.2d 1287 (8th Cir. 1991), plaintiffs did not dispute the fact that the floors of the lower levels of their houses were subgrade.  Instead, they argued that the

basement exclusion of the policy was not intended to cover so-called "walkout" basements, which have a direct exit to the yard. *Id.*, at 1289. As their sole support for this contention, plaintiffs merely referred to a footnote in a lengthy report from the General Accounting Office to two members of Congress which stated: "The flood insurance program's definition of a basement is an area of a building having its floor below ground on all sides. FIA [Federal Insurance Administration] does not consider 'walk out' basements as basements for insurance purposes." *Nelson*, 929 F.2d at 1289. In response, the Eighth Circuit stated that the footnote did not warrant "interpreting the unambiguous policy language defining and limiting the coverage of 'basements' to except walkout basements." *Id.*, at 1290. In sum, the Eighth Circuit stated that since one has to step up through the "walkout" into the plaintiffs' yards, the lower levels of their homes were basements under the terms of the SFIP. *Id.* Mr. Donnelly's basement area could be classified as walkout where one must step up from the basement to the back yard. See "Exhibit C." One must also step up to the street from the basement in the front of the home. *Id.*

Mr. Donnelly alleges that he is bringing this action, in part, to challenge the "interpretation and application" of the basement exclusion. Second Cause of Action, ¶ 14, p. 8. However, the "interpretation and application" of the basement exclusion are matters of settled law within the Third Circuit and this Honorable Court based on the foregoing law. Further, as previously stated, Plaintiff has provided no facts whatsoever that the basement definition is inapplicable to his claim under Third Circuit law, nor can he. Plaintiff's stated purpose for bringing the matter at bar fails under the controlling law. There is no ambiguity contained in the photos which comprise "Exhibit C," or any possibility that what they represent is open to interpretation. In each photo, it is clearly demonstrated that the lowest floor is subgrade on all sides, therefore Mr. Donnelly's lowest floor is a "basement" by SFIP definition.

Further, FEMA has drawn the line as to what is, and what is not, a basement.  Per U.S. Supreme Court authority:

> Congress could hardly define the multitudinous details appropriate for the business of crop insurance when the Government entered it.  Inevitably 'the terms and conditions' upon which valid governmental insurance can be had must be defined by the agency acting for the Government.  And so Congress has legislated in this instance, as in modern regulatory enactments it so often does by conferring the rule-making power upon the agency created for carrying out its policy.  See s 516(b), 52 Stat. 72, 77, 7 U.S.C. s 1516(b), 7 U.S.C.A. s 1516(b).  Just as everyone is charged with knowledge of the United States Statutes at Large, Congress has provided that the appearance of rules and regulations in the Federal Register gives legal notice of their contents. 49 Stat. 502, 44 U.S.C. s 307, 44 U.S.C.A. s 307.

*Merrill*, 332 U.S. at 384-385.  Like *Merrill*, the Congress has vested authority in FEMA to determine the "conditions of insurability" in the operation of the NFIP.  42 U.S.C. § 4013(a).  There is no doubt that the floor of the lowest level of the Plaintiff's building is "subgrade on all sides."  Plaintiff's flood damages are therefore in a "basement" as defined by the SFIP and were properly limited accordingly pursuant to Article III of the SFIP.  Mr. Donnelly's lower level is a "basement" both factually and legally.

<u>Plaintiff's Extra-Contractual Claims</u>

Plaintiff raises multiple arguments that can be regarded as extra-contractual claims.  These include vague and insufficient allegations of fraud, misrepresentation and negligence.  However these arguments are presented, they are all equally impossible of success.  The reason why these arguments fail is because they are based upon the incorrect theory that New Jersey Re can be held liable for what the Plaintiff considers "misleading" conduct.  The Plaintiff cannot claim any form of detrimental reliance, under any theory, in this case.  Such an argument is preempted, as well as barred, by two U.S. Supreme Court decisions directly on point.  In *Merrill*,

332 U.S at 385, the Supreme Court held that participants in federal insurance programs are charged with knowledge of the laws governing those programs. The Court stated:

> Just as everyone is charged with knowledge of the United States Statutes at Large, Congress has provided that the appearance of rules and regulations in the Federal Register gives legal notice of their contents. [citation omitted] Accordingly, the...Insurance Regulations were binding on all who sought to come within the Federal Crop Insurance Act, regardless of actual knowledge of what is in the Regulations or of the hardship resulting from innocent ignorance. The oft-quoted observation in Rock Island, Arkansas & Louisiana R. Co. v. United States, 254 U.S. 141, 143, that 'Men must turn square corners when they deal with the Government,' does not reflect a callous outlook. It merely expresses a duty of all courts to observe the conditions defined by Congress for charging the public treasury.

The Supreme Court expanded this standard in *Heckler*, 467 U.S. at 63, holding that participants in federal benefit programs do so under a further legal duty to "familiarize" themselves with the requirements of those programs. The court stated that:

> This observation has its greatest force when a private party seeks to spend the Government's money. Protection of the public fisc requires that those who seek federal funds act with scrupulous regard for the requirements of the law...This is consistent with the general rule that those who deal with the Government are expected to know the law...

Under *Heckler*, Mr. Donnelly was legally required to make certain that he fully understood the terms and conditions for participating in the NFIP.  Further, the Plaintiff was responsible to familiarize himself with his SFIP.  The SFIP specifically defines a "basement" and the limited coverage available to structures meeting this definition as delineated in Article III of the policy.

The Third Circuit has addressed these issues and held that extra-contractual tort claims relating to "disallowance of [an] insurance claim" under the SFIP, including misrepresentation claims, are preempted by federal law.  *C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co.*, 386 F.3d 263, 272 (3rd Cir. 2004).  The court reasoned that "the application of state tort law would impede

Congress's objectives" under the NFIP because "[i]ndisputably a central purpose of the [NFIP] is to reduce fiscal pressure on federal flood relief efforts," and "[s]tate tort suits against WYO companies, which are usually expensive, undermine this goal."  *Id.*, at 270.  See also *Uddoh v. Selective Ins. Co.*, 2012 WL 2979052 at *4 (explaining that "to the extent that the state law causes of action arise out of the way that [the WYO insurer] handled Plaintiff's claims, these causes of action are preempted"); *Pepe v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 2011 WL 4916290 *3 (D.N.J. Oct. 17, 2011) (dismissing tort claims because "extra-contractual and negligence claims are barred against all persons involved in the claims adjustment process, including the WYO company"); and *Miller v. Selective Ins. Co. of Am.*, 2009 WL 5033952 *6 n.8 (D.N.J. Dec.15, 2009)("State law claims based on alleged mishandling of SFIP claims are preempted by the NFIA.").

The Court in *Richmond Printing, LLC v. Director Federal Emergency Management Agency,* 72 Fed.App. 92, 98 (5th Cir. 2003)**,** summed up this requirement as follows:

> The unique situation presented by the NFIP creates additional responsibilities for the insured. One of those responsibilities is that, given that the insured is doing business with the government and that the terms of the SFIP are published in the CFR, **the insured has a duty to read and understand the terms of its SFIP**. (emphasis added).

All persons are charged with knowledge of the published law under *Merrill* and *Heckler*. The Plaintiff cannot claim that he fulfilled his duties to read and become familiar with the SFIP, but relied on the Defendant or others to inform him or others of such requirements.  As such, it is impossible for the Defendant to "misrepresent" the SFIP requirements to the Plaintiff or to any other person, because all participants in the NFIP are charged with knowledge of the SFIP, which includes the basement definition and the coverage afforded to structures with basements.

Furthermore, case law clearly establishes that insureds are not to rely on the actions, or

inactions, of claims personnel. In 1983, FEMA added Article VII(J)(8) to the SFIP. That provision reads as follows:

> 8.       We have not authorized the adjuster to approve or disapprove claims or to tell you whether we will approve your claim.

Shortly after it was added, this revised provision was analyzed in *Wagner v. Director, FEMA*, 847 F. 2d 515 (9th Cir. 1988). In *Wagner*, the court interpreted the provision to mean that the Policy "candidly warns" claimants <u>not</u> to rely upon claims personnel. *Id.*, at 520. Thus, it is well established that an insured may not rely on any statements made by adjusters or others as a basis for the insured's failure to comply with policy requirements or to understand the terms and conditions of the policy. Accordingly, any reliance by Mr. Donnelly or any other insured on purported misrepresentations in this case was not only not reasonable, but also legally impermissible. There is no curative amendment nor any additional facts which could be plead that can possibly change this well-established law for the Plaintiff. Any such amended pleading would be impossible of success.

The Plaintiff cannot claim that purported misrepresentations by adjusters or others about the interpretation of the SFIP during the claims handling process caused insureds not to seek additional amounts purportedly due under an SFIP. Such a claim ignores the insured's responsibilities under the SFIP. It is firmly established that insureds must fulfill all of the procedural requirements of the policy in order to seek U.S. Treasury funds. *Suopys*, 404 F.3d at 810. *See also Uddoh*, 2012 WL 2979052 at *3. As participants in the NFIP are charged with knowledge of all the provisions of such program under *Merrill* and *Heckler*, any assertion that "misrepresentations" or detrimental reliance caused them not to act upon their claim is impossible of success.

Regarding the issue of whether a plaintiff may even assert claims against an independent insurance adjuster for conduct that occurred during the course of the adjustment of an insured's NFIP claim, including any alleged misrepresentation, has recently been examined.  In *Moore & Moore Trucking, LLC v. Beard*, 2013 WL 828344 *3 (E.D.La. Mar. 6, 2013), the court noted that these adjusters, pursuant to 44 C.F.R. § 61.13(d), have no authority to alter, vary, or waive any SFIP provision.  The court also recognized that the adjusters are not authorized to approve or disapprove claims.  *Id.*  The court found that the FEMA regulations preempt the entire field of state tort regulation, including that against the claim adjusters.  *Beard*, 2013 WL 828344 at *4. See also the cases cited approvingly therein, including *Sutor v. FEMA*, 2009 WL 2004375 at *4-5 (E.D.Pa. July 9, 2009), from within the Third Circuit.

<u>Conclusion</u>

As New Jersey Re-Insurance Company has shown, the lower floor of the Plaintiff's insured property meets the definition of a "basement" under the SFIP, which has been held by the Third Circuit to be unambigous.  The SFIP only provides limited coverage for structures with a lower floor that qualifies as a basement under Article III of the Policy.  As such, Plaintiff's flood claims were properly adjusted by the Defendant.  In contrast, the Plaintiff has provided no factual allegations whatsoever to support his vague contentions that the definition of "basement" is somehow inapplicable to his claim.  Indeed, the Director of Claims of the National Flood Insurance Program has pronounced Mr. Donnelly's claim to be subject to the basement limitations and the lower level of his home to meet the criteria of the basement definition. Plaintiff has presented nothing to this Court except conclusory allegations which fail to meet the pleading requirements enunciated by the Supreme Court in *Twombly* and *Iqbal*.  Mr. Donnelly vaguely alleges fraudulent conduct by the Defendant or its representative, yet does not state a

claim with sufficient factual specificity to satisfy Rule 9, and any such claim would, in any event, be preempted by federal law.   For the foregoing reasons, dismissal under F.R.Civ.P. 12(b)(6) is proper as a matter of law and the Plaintiff's cause should be dismissed with prejudice as he has not stated a claim and cannot state a legally viable claim under any circumstance.

<div style="margin-left:40%">

Respectfully submitted,

BY:     _/s/ Patrick W. Brophy_____
Patrick W. Brophy
McMahon, Martine & Gallagher, LLP
55 Washington Street, Ste. 720
Brooklyn, NY  11201
T.  212.747.1230
F.  212.747.1239
Email:  pbrophy@mmglawyers.com
Local Counsel for Defendants, New Jersey Re-Insurance Company

</div>

## CERTIFICATE OF SERVICE

I hereby certify that, on March 22, 2013, the foregoing NOTICE OF MOTION was served on all counsel of record via the CM/ECF system.

<div style="margin-left:40%">

_/s/ Patrick W. Brophy_
Patrick W. Brophy

</div>